Buford, J.
 

 The plaintiff in error was plaintiff in the court below and sued the defendant in error for money
 
 *1514
 
 alleged to be due the plaintiff by reason of a shortage in timber purchased from the defendant by the plaintiff. The defendant, amongst other things, pleaded:
 

 “7. Defendant says that the plaintiff, at the institution of this suit was and is indebted to the defendant in an amount greater than plaintiff’s claim, to-wit: in the sum of $14,000.00 which defendant is willing to offset against the plaintiff’s claim, to-wit:
 

 “For that the plaintiff, in and by the contract sued on, agreed to buy all the timber covered by the said contract between the defendant and Gress Manufacturing Company, by which contract the buyer was to take all timber measuring eight inches or more in diameter at a point six inches from the ground, which, was standing or growing -upon said lands; but the plaintiff disregarding said contract, and in violation thereof took timber measuring only eight inches or more in diameter at an average height of three feet above the ground, and in cutting it at that height, thereby “wasted and lost the difference in the amount of timber that would have been produced by cutting it six inches above the ground, and the amount actually produced by cutting it at the average of three feet above the ground as aforesaid; that by reason of plaintiff’s acts and conduct in that respect, there has been left upon the ground and totally lost.to defendant a large amount of timber for which the plaintiff was liable to pay $6.00 per thousand,' to-wit: two million feet, more or less, which at the contract price amounts to $12,000.00 in value; wherefore defendant says he is entitled to said amount with interest thereon at legal rate from October, 31st, 1926, totalling $14,000.00-at the institution of this suit, which amount with interest thereon to the rendition of final judgment defendant
 
 *1515
 
 is willing to set off against the plaintiff’s claim, and prays judgment against the plaintiff for the balance.”
 

 Demurrer was interposed to this plea which was overruled. Thereafter, replication was filed as follows:
 

 “That it is not indebted to the defendant in any amount as alleged in said plea, because plaintiff says it never did contract, promise and agree to take all the timber covered by the said contract between Gress Manufacturing Company and the defendant, measuring eight inches .in diameter and cut the same six inches from the ground, but plaintiff agrees to take all the timber measuring eight inches in diameter at a point six inches from the ground and agrees to cut the said timber in the usual and customary manner; that it did take and cut all the timber which measured eight inches in diameter six inches from the ground and it did cut the said timber in the usual and customary manner, and it never at any time agreed with the defendant to cut the said timber at a point six inches from the ground.”
 

 Demurrer was filed to the replication and sustained. Issue was joined.
 

 There were other pleas upon which issue was joined but it is only necessary for us to consider the defense interposed by the amended Seventh plea. The contract between the plaintiff and the defendant, amongst other things, provided as follows:
 

 “THEREFORE, For and in consideration of the covenants and agreements, moneys paid and to be paid, as hereinafter set forth, the party of the first part does sell, assign and convey to the party of the second part,
 
 *1516
 
 all the timber which was sold or contracted to be sold by the party of the first part' under the said contract with the Gress Manufacturing Co. as hereinbefore stated, limited, of course, to the conditions in the said contract, save and except as hereinafter qualified, and also all the saw mill timber bearing the same specifications as in the said Gress contract mentioned, which is situated upon the said land hereinbefore described' which is in controversy with the said A. W. Gilchrist, conditionally however that the suit which is now pending concerning the said land is won by the party of the first part.
 

 “The consideration for the said timber which the parties herein agree to is $6.00 per thousand stumpage, the same to be .paid as follows, to-wit: $2500.00 in cash, to be paid when this contract is signed, and the assumption by the party of the second part of $35,000.-00 the consideration for the said timber which the said party of the first part agrees to pay to the Gress Manufacturing Company, and after the said Gress Manufacturing Company has been paid the said $35,000.00 with interest, and the party of the second part has been returned its $2500.00 with interest, the same being computed monthly based upon the' timber cut at the said rate of $6.00 per thousand, then the party of the second part shall remit to the party of the first part $6.00 per thousand for the remaining 'timber cut.”
 

 The contract between Gress Manufacturing Company and Stuckey, amongst other things, provided as follows:
 

 “The grantor, for the considerations above named, has and does by these agreements, grant, bargain,
 
 *1517
 
 sell, convey and confirm nnto the said grantee, his heirs and asigns; and the said grantee on the
 
 temme
 
 and for the purposes hereinafter recited now agrees to purchase all the timber now owned by the grantor and heretofore acquired by it on July 19th, 1923, from Manasota Land and Timber Company, a corporation of Maryland, said timber measuring eight inches or more in diameter at a point six inches from the ground, which is standing or growing upon the lands of said Manasota Land and Timber Company, in Sarasota and Charlotte Counties, Fla. in Townships 41 and 42 South Range 28 East and more particularly described as follows:”
 

 It is the contention of the defendant, and which was sustained by the Court, that under the terms of the contract the plaintiff was obligated to cut the timber at a point six inches from the ground and that the plaintiff instead of cutting the timber at' a point six inches from the ground otherwise cut the timber leaving a higher stump and thereby wasting that portion of the timber between the point six inches from the ground and the point where the tree was cut.
 

 The plaintiff contended that it was necessary to take the measure of the minimum trees at six inches from the ground, but that under the contract it was allowable for him to cut the trees in the usual and customary manner which was a greater distance above the ground.
 

 It is true that unless the provisions of the contract are otherwise the tree cut for lumber will be measured at the stump as cut in the usual and customary manner. But where the contract calls for the sale of all timber measuring eight inches and more in diameter at six inches from the ground it must necessarily be assumed that the pur
 
 *1518
 
 chaser.buys and agrees to pay for all that timber above the point six inches from the ground.
 

 In Gulf Yellow Pine Lumber Co. v. Mank, 159 Ala. 318, 49 So. R. 248, where the contract was for the sale of standing timber and described the trees sold as trees twelve inches at the stump, it was held that this meant twelve inches in diameter at the stump and the Court in that case say:
 

 “Defendant was the owner by assignment of a contract with plaintiff by which it had a right to cut all ‘merchantable’ trees upon plaintiff’s land, ‘timber to cut 12 inches at the stump’. The evidence tended to support the contention that defendant had cut trees less than twelve inches in diameter at the point of cutting. Appellant’s theory is that the stipulation quoted -is meaningless and of no effect, or that it could just as well mean a stump 12 inches above the ground or trees 12 inches in circumference. But we do not agree. The common intent of the parties was that the trees cut should be suitable for conversion into merchantable timber. Timber is such stuff as is suitable for building and allied purposes. Unless we affect to be ignorant of matters of everyday experience and observation, we must know that a tree 4 inches in diameter—diameter being approximately one-third of circumference—at the stump, or point where cut, squared, sawed or otherwise prepared for use and the market, will not afford timber. The consideration, along with the contex, gives unmistakable clue to the meaning of the stipulation in question. It related to the timber to be cut, and not to the useless stump to be left. It meant that the timber should measure not less than 12 inches in diameter at the point where severed from the stump.’’
 

 
 *1519
 
 In Banks v. Blades Lumber Co., 142 N. C. 49, 54 So. E. R. 884, in a case involving a contract where the term “at the base” was used to describe the. place where measurement of trees was to be taken the Court say:
 

 “His Honor was correct in holding that ‘at the base’ meant ‘at the ground’. Webster defines ‘base’: That on which something is supported, as the base of a column, the base of a moutain,
 
 i. e.,
 
 at the foot of the-column, at the foot of the mountain. The contract specifies timber ‘now standing or growing’,
 
 i. e.,
 
 trees; and the base of a tree is ‘at the foot’ of the tree. If the parties intended that the measurement should be taken ‘at the stump’ or ‘24 inches above the ground’, they have not so contracted. The contract being for measurement at the base, it can.not be contradicted by parol. Certainly, evidence merely that it was customary in that section to cut timber 2 feet above the. ground could not have that effect, for it was not shown, or offered to be shown, that such cutting was usually under contracts stipulating for measurement ‘at the base’, and that when cut under such contracts the ‘diameter at the base’ was, by general custom, understood and taken to be 12 inches in diameter 2 feet above the ground. His Honor, therefore, properly held that ‘12 inches in diameter at the base’ meant ‘at the ground’. If this enabled the defendant to cut trees that might measure less than 12 inches in diameter 2 feet above the ground it is because the plaintiff so contracted.”
 

 It appears to us that the trial court properly construed the provisions of the contract in controversy and that the instructions of the court to the jury in regard to the issues between the parties contain'no reversible error. The parties
 
 *1520
 
 were entirely within their rights to contract in such manner as they saw fit and, having entered into a contract containing the provisions chosen, they were obligated to abide by those provisions. The evidence shows that the waste occasioned by the cutting of the trees at a point higher than the point of measurement named in the contract resulted in a great waste of timber for which, under the terims of the contract, the plaintiff was responsible.
 

 For the reasons stated, the judgment should be affirmed and it is so ordered.
 

 Affirmed.
 

 Whitfield, P. J. and Strum, J., concur.
 

 Terrell, C. J. and Ellis and Brown, J. J., concur in the opinion and judgment.